IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Tammy Rene Millmine as Personal Representative of the Estate of Billy Frank Cornett, Jr., and in her individual capacity, | C/A NO. 3:09-1644-CMC |
| Plaintiff, | **OPINION and ORDER** |
| v. | |
| The County of Lexington (South Carolina), Lexington County Sheriff's Department, James R. Metts, individually and in his official capacity as Sheriff of Lexington County, Prison Health Services, Inc., | |
| Defendants. | |

This matter is before the court on Defendants' motions for summary judgment. Plaintiff has responded in opposition to both motions, and Defendants have filed replies. For the reasons set forth below, the court grants Defendants' motions and dismisses this matter with prejudice.

**I. STANDARDS**

**A. Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

---

[1] On December 1, 2010, Rule 56 was amended. The standard for deciding summary judgment remains the same.

1

The party moving for summary judgment has the burden of showing the absence of a genuine dispute, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The essence of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

When the non-moving party has the ultimate burden of proof on an issue, the moving party must identify the parts of the record that demonstrate a lack of genuine dispute as to a material fact. Fed. R. Civ. P. 56(c). In response to the motion, the nonmoving party must then either cite to particular parts of materials in the record or show that the materials cited "do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)(B); *see also generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party "cannot create a genuine [dispute] through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995). The summary judgment inquiry "scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of [her] claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 11310, 1316 (4th Cir. 1993).

2

**B. Eighth Amendment – Deliberate Indifference to Serious Medical Need**[2]

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Plaintiff has alleged a violation of decedent's rights secured by the Eighth Amendment under *Estelle v. Gamble*, 429 U.S. 97 (1976). There the Court held that deliberate indifference to a prisoner's serious medical needs, whether by a prison doctor or a prison guard, is prohibited by the Eighth Amendment. *Id*. at 104-105.

The treatment of a prisoner's serious psychological condition warrants scrutiny under the Eighth Amendment, as serious medical needs include serious psychological problems, including a desire to commit suicide. *See Gordon v. Kidd*, 971 F.2d 1087 (4th Cir. 1992); *Buffington v. Baltimore County, Md.*, 913 F.2d 113, 120 (4th Cir. 1990); *Clinton v. County of York*, 893 F. Supp. 581, 584 (D.S.C. 1995). Indeed, the duty to protect incarcerated individuals includes the duty to protect them from themselves. *Lee v. Downs*, 641 F.2d 1117, 1121 (4th Cir. 1981) (holding that "prison officials have a duty to protect prisoners from self-destruction or self-injury.").

To establish liability on an Eighth Amendment claim, Plaintiff is required to prove two elements, one objective and the other subjective. Plaintiff presents a claim involving deliberate indifference to serious medical needs. The objective element of an Eighth Amendment claim relating to an inmate's medical treatment, or lack thereof, is satisfied by establishing that decedent had a serious medical need. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

---

[2]It is unclear whether decedent was a pretrial detainee or was serving a sentence of incarceration. The rights of a pretrial detainee complaining of inadequate medical care under the Fourteenth Amendment "are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). This order, therefore, speaks in terms of alleged violations of decedent's Eighth Amendment rights.

necessity for a doctor's attention." *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (internal quotations omitted).

The parties do not dispute that decedent had a history of mental instability, commitments to mental health facilities, and suicide attempts. Therefore, the court finds that decedent had a serious medical need at the time of his suicide.

The subjective component of an Eighth Amendment claim is satisfied by showing an official's deliberate indifference to a prisoner's serious medical need. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). *See also Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (noting that "the subjective component requires proof of more than mere negligence but less than malice"). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844. *See also Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (prison official was not deliberately indifferent because he did not actually draw the inference that the prisoner was exposed to a specific risk of harm). "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Put succinctly, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur County, Tx.*, 245 F.3d 447, 459

(5th Cir. 2001) (emphasis supplied). This "distinction between [a negligent act] and deliberate indifference applies to jail suicides." *Kidd*, *supra*, 971 F.2d at 1095.

## II. BACKGROUND

Taken in the light most favorable to Plaintiff, decedent, Billy Frank Cornett, Jr. ("Cornett"), was an inmate at the Lexington County, South Carolina Detention Center ("LCDC") from October 9, 2006, to June 24, 2007.[3] Cornett had a history of periods of mental instability, commitments to mental health facilties, and suicide attempts. At the time of his death, Cornett had been placed on on "max watch" by jail authorities.[4] On June 24, 2007, unnamed LCDC personnel escorted Cornett to the shower, gave him a towel, and departed, allowing Cornett to shower unsupervised. Personnel returned thirteen (13) minutes later and discovered Cornett hanging by his towel from a showerhead, attempting to commit suicide. Attempts to revive Cornett were unsuccessful, and he later died.

On June 20, 2009, Plaintiff brought suit in this court as the representative of the estate of Cornett. The Amended Complaint, filed August 17, 2009, asserts causes of action under 42 U.S.C. § 1983 for violation of the Eighth Amendment (in both alleged indifference to serious medical needs and in failing to properly train officers).[5] Plaintiff's suit names Defendants County of Lexington

---

[3] See note 2, *supra*.

[4] At the time of his death, Cornett was on "max watch," as evidenced by logs attached to Plaintiff's Response to PHS's motion for summary judgment. Dkt. #57-6 (filed Aug. 1, 2010). However, there is no independent admissible evidence in the record of the beginning date of the "max watch," what "max watch" is, who made the decision to place Cornett on "max watch," and whether there was a written policy regarding "max watch" and, if so, who produced and enforced this policy.

[5] Plaintiff's Third and Fourth Causes of Action in her Amended Complaint are styled as "42 U.S.C. § 1983 Survival Action" and "42 U.S.C. § 1983 – Wrongful Death." Am. Compl. at 8-9. However, in a § 1983 action, the action survives for the benefit of dececent's estate if the applicable state law allows such an action. *Belcher v. South Carolina Bd. of Corrections*, 460 F.Supp. 805, 807 (D.S.C. 1978). South Carolina Code § 15-5-90 provides for the survival of an action to recover for injuries to the decedent while he was alive. While the South Carolina Supreme Court has recognized

(South Carolina); Lexington County Sheriff's Department; James R. Metts, individually and in his official capacity as Sheriff of Lexington County (the "Lexington Defendants"); and Prison Health Services, Inc. ("PHS").

### III. DISCUSSION

#### A. MOTION FOR SUMMARY JUDGMENT – LEXINGTON DEFENDANTS

The Lexington Defendants (County of Lexington(South Carolina), Lexington County Sheriff's Department, and James Metts) have moved for summary judgment. Plaintiff has responded in opposition, and the Lexington Defendants have replied. For the reasons argued by Defendants and discussed below, each of the Lexington Defendants is entitled to summary judgment.

#### 1. COUNTY OF LEXINGTON (SOUTH CAROLINA)

Defendant County of Lexington (County) has moved for summary judgment, contending that it is not a proper party to this action because employees of the Lexington County Detention Center (LCDC) are employees of the Office of the Sheriff, and acts thereof are acts of State officials. Plaintiff argues in opposition that Defendant County had a non-delegable duty to provide medical care to incarcerated persons, and that Defendant County "remains liable for any constitutional deprivations caused by the policies of" Defendant PHS. Pl.'s Resp. in Opp'n. at 3 (Dkt. #59, filed Aug. 2, 2010).

In *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality could be found liable under § 1983 only where the municipality itself caused the constitutional violation at issue. The initial inquiry is whether there

---

certain exceptions to the survival of a cause of action, *see Layne v. Int'l Bd. of Elec. Workers Local 382*, 247 S.E.2d 346, 349 & 349 n.2 (S.C. 1978) (actions for malicious prosecution, libel and slander, and fraud and deceit do not survive death), these do not apply here. Plaintiff's Third and Fourth Causes of Action are, therefore, surplusage.

6

is a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

A government policy or custom need not have received formal approval through the municipality's official decisionmaking channels to subject the municipality to liability. Rather, when an alleged constitutional deprivation is caused by the official actions of those individuals "whose edicts or acts may fairly be said to represent official policy," the government as an entity is responsible under § 1983. *Monell*, 436 U.S. at 694. Because § 1983 was not designed to impose municipal liability under the doctrine of respondeat superior, the "official policy" requirement was "intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Accordingly, Plaintiff is required to adequately plead and prove the existence of an official policy or custom that was fairly attributable to Defendant County and that proximately caused the deprivation of decedent's rights. *See Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir.1999); *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir.1994). "A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 411 (1997).

If a municipal agency develops an unconstitutional "custom or usage," *i.e.*, a widespread practice of a particular unconstitutional method, such custom or usage may be the basis for municipal liability, "but only if its continued existence can be laid to the fault of municipal policy-makers, and a sufficient causal connection between the 'municipal custom and usage' and the specific violation can then be established." *Randall v. Prince George's County, Md.*, 302 F.3d 188, 210 (4th Cir. 2002) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987)). "In

7

order for liability to attach, (1) the municipality must have 'actual or constructive knowledge' of the custom and usage by its responsible policymakers, and (2) there must be a failure by those policymakers, 'as a matter of specific intent or deliberate indifference,' to correct or terminate the improper custom and usage." *Id*. (quoting *Spell*, 824 F.2d at 1391).

Inadequacy of training "may serve as the basis for [municipal] § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom" the municipality's employees come into contact. *City of Canton*, *supra*, 489 U.S. at 388; *Doe v. Broderick*, 225 F.3d 440 (4th Cir. 2000). "A plaintiff must identify a deficiency in a training program closely related to the injury complained of and must further show that the injury would have been avoided 'under a program that was not deficient in the identified respect.'" *Gordon*, 971 F.2d at 1097 (quoting *City of Canton*, 489 U.S. at 391). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality-a 'policy as defined by our prior cases-can a [municipality] be liable for such a failure under § 1983." *City of Canton*, 489 U.S. at 388 n.8.

On June 29, 2004, Defendant County executed a contract with Defendant PHS to provide medical and dental services at the Lexington County Detention Center (LCDC) for a period of three years. Dkt. #63-1 at 1-4 (filed Aug. 12, 2010). Defendant PHS did not contract to provide mental health services at LCDC, which was "contracted and provided through Lexington County Mental Health." *Id*. at 5. The County's contract with PHS evinces the County's exercise of its statutory duty to provide the inmates at LCDC with access to medical and dental care, and therefore cannot be said to be an official policy or custom, fairly attributable to Defendant County, which caused a violation of Cornett's rights.[6] Additionally, Plaintiff's conclusory assertions regarding funding for

---

[6]"The governing body of each county in this State shall furnish, at all times, sufficient food, water, clothing, personal hygiene products, bedding, blankets, cleaning supplies, and shelter from

8

medical care and that Defendant County had a "custom of denying care to inmates by continuing to contract its medical care to PHS at the time of Cornett's death and for 'turning a blind eye' to the care inmates received at LCDC," Pl.'s Resp. at 7 (Dkt. #59, filed Aug. 2, 2010), fail to meet Plaintiff's evidentiary burden under Rule 56. Finally, to the extent that any alleged acts of deliberate indifference relating to this incident were committed by LCDC employees, Plaintiff has not countered the Lexington Defendants' arguments that these individuals were employees of the Sheriff, not the County.

Plaintiff argues that the County is liable as it had a non-delegable duty to provide medical care to LCDC inmates, and that its contract with PHS does not relieve it of potential liability. This argument is an effort to hold County accountable under a respondeat superior theory, which is not a viable theory of liability under § 1983.

Therefore, Defendant County of Lexington is entitled to summary judgment as to all claims.

### 2. LEXINGTON COUNTY SHERIFF'S DEPARTMENT

In South Carolina, a sheriff's department is an agency of the state, not a department under the control of the county. *Gulledge v. Smart*, 691 F. Supp. 947, 954-55 (D.S.C. 1988) (discussing sheriff as agent and alter ego of state and that deputy sheriffs act as the sheriff's agents), *affd*, 878 F.2d 379 (4th Cir. 1989); *Carroll v. Greenville County Sheriff's Dep't*, 871 F. Supp. 844, 846 (D.S.C. 1994) (suit against the sheriff's office is suit against the state). As an agency of the state, the Lexington County Sheriff's Department is immune from suit under the Eleventh Amendment. *Stewart v. Beaufort County*, 481 F. Supp.2d. 483, 492 (D.S.C. 2007) ("[A] federal court lacks jurisdiction to hear a cause of action against a South Carolina Sheriff's Department, as such a suit

---

extreme heat or cold or rain for all persons confined in a jail and access to medical care." S.C. Code Ann. § 24-5-80.

is barred by state immunity."). Therefore, Defendant Lexingon County Sheriff's Department is dismissed from this action based upon Eleventh Amendment immunity.

### 3. JAMES R. METTS

*a. Official Capacity*

It is well settled, in both South Carolina law and Federal law regarding 42 U.S.C. §1983 litigation, that a Sheriff in South Carolina is an arm of the State and as such enjoys Eleventh Amendment Immunity in Federal Court when sued in his official capacity. *See Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996); *Cone v. Nettles*, 417 S.E.2d 523 (1992); *Gulledge v. Smart*, 691 F.Supp. 947 (D.S.C. 1988). Eleventh Amendment immunity "extends to 'arms of the State,'… including state agencies and state officers acting in their official capacity." *Cromer*, 88 F.3d at 1332 (internal citations omitted). Eleventh Amendment immunity protects state officials, sued in their official capacity, from liability for monetary damages under 42 U.S.C. § 1983. *Cone*, 417 S.E.2d at 525. As a result, Sheriff Metts is considered an arm of the State and is entitled to Eleventh Amendment immunity in his official capacity.

*b. Individually*

(1)  Personally

Plaintiff contends that Metts is personally liable because he was responsible for adopting and enforcing policies at LCDC; that he failed to properly screen, train, supervise and/or discipline personnel; and that he knew or should have known of the threat of Cornett's suicide. *See generally* Amended Complaint.  Defendant Metts has moved for summary judgment, arguing that he was not personally involved in any act which deprived Cornett of any right, nor has Plaintiff offered proof of a specific policy for which he was personally responsible which resulted in Cornett's death.

In response, Plaintiff argues that Metts' liability is premised on his supervision, operation, and management of LCDC and its employees; that he knew or should have known of the threat of Cornett's suicide; that he failed to properly screen train, supervise, and/or discipline personnel; and that he "was deliberately indifferent by failing to provide a secure facility, and by maintaining a dangerous and defective facility." Pl.'s Resp. at 8 (Dkt. #59, filed Aug. 2, 2010). Metts argues in reply that the contentions contained in Plaintiff's opposition to his summary judgment motion – argument relating to facility condition – "appear to be made against the . . . Sheriff in his official capacity . . . ." Reply at 5 (Dkt. #60, filed Aug. 10, 2010).

To establish Metts was deliberately indifferent to Cornett's serious medical needs, Plaintiff must present facts to evince that he had actual knowledge of and disregard for Cornett's objectively serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Under *Farmer*,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

511 U.S. at 837.

In order to be liable under the "knows of and disregards" standard, "[d]eliberate indifference requires a showing that the defendant[ ] actually knew of and disregarded a substantial risk of serious injury to the detainee or that [he] actually knew of and ignored a detainee's serious need for medical care." *Young v. City of Mount Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001).

As relates to this case, knowledge of an inmate's suicidal tendencies is not imputed to officers who are unaware of the risk. See *Gordon*, *supra*, 971 F.2d at 1095.

Metts avers that he "do[es] not recall the decedent being at the Lexington County Detention Center and had no personal contact with the decedent." Aff. of James R. Metts at ¶ 5 (Dkt. #55-2,

11

filed July 16, 2010). Plaintiff offers no evidence that Metts had any knowledge of Cornett or played any personal role in the events which led to Cornett's suicide. Therefore, Defendant Metts is entitled to summary judgment in his personal capacity.

### (2) Supervisory Liability

It is well settled that "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). Such liability is not based on ordinary principles of respondeat superior, but rather is premised on "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). In order to establish supervisory liability under § 1983, Plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices [ ]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Plaintiff must show that the supervisor's corrective inaction amounts to deliberate indifference or "tacit authorization of the offensive acts."

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). "A pervasive risk of harm (under this principle) may not ordinarily be shown by pointing to a single incident or isolated incidents," *Withers v. Levine*, 615 F.2d 158, 161 (4th Cir. 1980), nor is a "(s)howing that individual officers violated a person's constitutional rights on an isolated occasion . . . sufficient to raise an issue of fact whether adequate training and procedures were provided." *McClelland v. Facteau*, 610 F.2d 693, 697 (10th Cir. 1979).

12

Plaintiff provides no evidence to establish a causal connection between a specific Sheriff's Office policy and Cornett's suicide, a requisite to establishing a supervisory liability claim. *Shaw*, *supra*, 13 F.3d at 799. Additionally, Plaintiff presents no evidence that Metts had any knowledge of any specific conduct by his subordinates which created a "pervasive or unreasonable" risk of Cornett's suicide. Additionally, Plaintiff's unsupported assertions that the events surrounding this incident resulted from either unconstitutional conditions or a failure to train officers are insufficient to survive Metts' motion for summary judgment.

Metts is, therefore, also entitled to summary judgment in his supervisory capacity.[7]

### B. MOTION FOR SUMMARY JUDGMENT – PRISON HEALTH SERVICES

Plaintiff has also named Defendant Prison Health Services, Inc. (PHS), complaining that it failed to provide "adequate medical care" to Cornett which precipitated his suicide. *See* Amended Complaint at 5-6. PHS has moved for summary judgment, arguing that Plaintiff has failed to establish any policy, procedure or custom of PHS which violated Cornett's Eighth Amendment rights. Additionally, PHS argues that it cannot be deemed liable under a respondeat superior theory, and, even assuming it could be so liable, PHS did not provide mental health services to LCDC inmates at the time of Cornett's death. Plaintiff counters that PHS's liablity could be established

---

[7]To the extent Plaintiff argues in her response to Lexington Defendants' motion for summary judgment that Metts is not entitled to summary judgment based upon his operation of an alleged dangerous and defective facility, this assertion fails. Plaintiff's Amended Complaint raises two claims relating to alleged Eighth Amendment violations. Not only do neither of Plaintiff's claims (alleged deliberate indifference to serious medical needs and failure to train) assert claims relating to the condition of the facility, but Plaintiff's contentions relating to a dangerous and defective facility are couched in terms of a negligence cause of action, which is not viable under § 1983. Additionally, the undersigned notes that raising assertions for the first time in a response to summary judgment fails to adequately plead and prove a cause of action.

13

if it was "dreictly involved in the alleged violation or that a policy or custom of the corporation led to the violation." Pl.'s Resp. at 3 (Dkt. # 57, filed Aug. 1, 2010).

Assuming, without deciding, that PHS was acting under color of state law,[8] "a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727 (4th Cir. 1999); *see also Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982) (holding that the principles of § 1983 municipal liability articulated in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), are "equally applicable to the liability of private corporations" and "a private corporation cannot be saddled with section 1983 liability via respondeat superior alone.").

In this case, Plaintiff does not identify a specific policy or custom and a direct causal link between that policy or custom and Cornett's death. *Walker v. Prince George's County, Md.*, 575 F.3d 426, 431 (4th Cir. 2009) (finding that a plaintiff is "obliged to identify a 'policy' or 'custom' that caused [her] injury"). Plaintiff's conclusory assertions that PHS had a "custom of denying care to inmates" are insufficient to meet her evidentiary burden under Rule 56. Therefore, without

---

[8]This court has previously noted that it is an open question in the Fourth Circuit whether § 1983 liability extends to employees of a private prison facility under contract with the state. *See Holly v. Scott*, 434 F.3d 287, 292 n.3 ("It is an open question in this circuit whether § 1983 imposes liability upon employees of a private prison facility under contract with the state. We need not decide that issue here."). In *Holly*, the court held that *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), did not authorize a cause of action in favor of a *federal* prisoner against employees of a privately operated prison operating under contract with the United States Bureau of Prisons. In reaching this conclusion, the court distinguished Section 1983 claims from *Bivens* claims in various respects, including that § 1983 was a statutory creation and *Bivens* a judicial creation. This footnote in *Holly* notwithstanding, the United States Supreme Court has recognized that state prisoners "enjoy a right of action against private correctional providers under 42 U.S.C. § 1983." *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 72 n.5 (2001). This position is acknowledged in the dissent in *Holly*, noting that *Malesko* "did expressly recognize that such individuals [private correctional providers] are government actors whose conduct is attributable to the government; thus, they would in the appropriate case, be subject to suit on that basis." *Holly*, 434 F.3d 299 (Motz, J., dissenting).

14

Plaintiff specifically identifying a policy or custom and its resulting causation, defendant PHS may not be held liable under § 1983 and, therefore, is entitled to summary judgment.

Additionally, PHS did not contract with Defendant County to provide mental health care to the inmates at LCDC. Aff. of Jesse Hubling at ¶ 7 (Dkt. #51-2). Therefore, to the extent Plaintiff contends PHS is liable for alleged failures relating to mental health counseling and care, these claims necessarily fail.

For these reasons, PHS is entitled to summary judgment as to Plaintiff's claims under 42 U.S.C. § 1983.[9]

### C. CONCLUSION

For the reasons discussed above, Defendants' motions for summary judgment are granted and this matter is dismissed with prejudice.

**IT IS SO ORDERED.**

                s/ Cameron McGowan Currie
                CAMERON MCGOWAN CURRIE
                UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
January 20, 2011

---

[9] On June 21, 2010, Plaintiff filed a companion case in this court. *See Millmine v. Harris*, D.S.C. Civil Action No. 3:10-1595-CMC ("Millmine II"). Millmine II asserts claims against eleven (11) individual defendants (including five (5) John Doe defendants) and PHS. Plaintiff's claims in Millmine II mirror the allegations made in the case at bar except that Plaintiff has asserted negligence claims against PHS. There are no state law claims before the court in the current action and therefore granting summary judgment to PHS goes only to claims brought under 42 U.S.C. § 1983.